UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 2:19-cr-00003-1 |
| | ) | Judge Aleta A. Trauger |
| HEATHER MARKS and HEMAL | ) | |
| V. MEHTA, M.D. | ) | |

# MEMORANDUM & ORDER

Heather Marks has filed a Motion to Exclude Government's Proposed Rule 404(b) Evidence (Doc. No. 105), which Dr. Hemal V. Mehta has been permitted to join (Doc. Nos. 107, 112), the United States has filed a Response (Doc. No 113), and the defendants have filed a Reply (Doc. No. 114). For the reasons set out herein, the motion will be granted in part and denied in part.

Marks was a Tennessee-licensed Advanced Practice Registered Nurse[1] when she allegedly prescribed Schedule II controlled substances outside the usual course of professional practice and without a legitimate medical purpose. The United States has brought a ten-count Superseding Indictment against Marks and Dr. Mehta, who was the physician who supervised her. (Doc. No. 40.) Count One alleges:

> Between on or about September 2016, through on or about May 2018, in the Middle District of Tennessee and elsewhere, HEMAL V. MEHTA and HEATHER L. MARKS did knowingly and intentionally combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to distribute and dispense Schedule II controlled substances, including oxycodone and oxymorphone, without a legitimate medical purpose and outside the usual course of professional practice.

---

[1] "'Advanced practice registered nurse' means a registered nurse with a master's degree or higher in a nursing specialty and national specialty certification as a nurse practitioner, nurse anesthetist, nurse midwife or clinical nurse specialist." Tenn. Code Ann. § 63-7-126(a).

All in violation of Title 21, United States Code, Section 846.

(*Id.* ¶ 7.) Counts Two through Ten are for distribution of the aforementioned controlled substances, with each count representing a particular prescription for oxymorphone or oxycodone to a different patient. (*Id.* ¶¶ 8–9.)

After the entry of the Superseding Indictment, the United States served the defendants' counsel with a Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 404(b). (Doc. No. 105-2.) The Notice indicated that the government will seek to introduce a September 28, 2017 Letter of Concern from the Tennessee Department of Health's Office of Investigations ("TDHOI") to Marks concerning Marks' prescribing and record-keeping practices. (Doc. No. 105-1.) TDHOI is the office that reviews and investigates complaints made to Tennessee's Health Related Boards, which oversee licensure for medical professionals, including nurses, within the state, and the letter makes reference to the state's licensure statutes and rules.[2] *See Smith v. Methodist Hosps. of Memphis*, No. W2011-00054-COA-R3CV, 2012 WL 3777139, at *2 (Tenn. Ct. App. Aug. 31, 2012) (discussing Office of Investigations).

The Letter of Concern that TDHOI sent to Marks indicated that the agency had received a "complaint against [Marks'] nursing license" alleging that she had inappropriately prescribed controlled substances and that, in response to that complaint, TDHOI had reviewed Marks' "prescribing practices" and "identified some areas of concern." (Doc. No. 105-1 at 2.) Among other things, the Letter of Concern told Marks, "[a]s a reminder," that she should "avoid prescribing patients a combination of opioids with benzodiazepines"—although Marks maintains

---

[2] The parties' briefing repeatedly refers to the Office of Investigations as the "OIG." That acronym is used in connection with a number of offices and agencies—including at least one other Tennessee state healthcare agency with no apparent connection to this case, *see* Tenn. Code Ann. § 71-5-2505(1)—and typically refers to an office of an inspector general. For the purposes of this opinion, the court will use "TDHOI" to avoid confusion.

2

that it was not her policy to do so and that she prescribed that combination very rarely. (*Id.*; Doc. No. 105 at 4.) The Letter also cautioned Marks that she "should avoid prescribing high doses of narcotics" in excess of the state's Chronic Pain Guidelines and that exceeding those Guidelines carried with it a significantly increased risk of overdose. (Doc. No. 105-1 at 3.) TDHOI instructed Marks that she "should consistently develop [her] own pain treatment plan and prescribing regime for each patient based on [her] own medical decision making rather than prescribing a patient certain controlled substances that he or she was being prescribed by a prior provider." (*Id.*) The Letter concluded:

> Your conduct in this matter could constitute a violation(s) of Tenn. Code Ann. §§ 63-7-115(A)(1)(C), (F) and (Q), and the Board's rules regulating the practice of medicine regarding prescribing, including Tenn. Comp. R. &Regs. Rule I000-01-.13(l), (r), (t). and (u).
>
> While this is not a formal disciplinary action and no record of this will appear in your licensure file, you are **WARNED** that any further conduct of this nature could result in the filing of formal charges against you by the Tennessee Department of Health.
>
> If you have any questions, please feel free to contact me.

(*Id.*) The defendants now ask the court to exclude the Letter and any other evidence related to the TDHOI investigation. (Doc. No. 105.)

The United States responds, first, that, although it disclosed the letter as potential Rule 404(b) evidence "in an abundance of caution," its position is that the letter is not, in fact, evidence of "other" bad acts, as contemplated by Rule 404(b), but, rather, direct evidence of the conspiracy charged in Count One—that is, it is evidence of the same bad acts as those charged. (Doc. No. 113 at 3.) Indeed, both the government *and* the defendants have identified arguably persuasive reasons why this issue does not fit neatly into the Rule 404(b) paradigm of "other bad acts." As Marks points out, "[a] party seeking to admit 404(b) evidence must first demonstrate that the other bad

3

acts occurred." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). (*See* Doc. No. 105 at 8.) The Letter of Concern, however, does not represent an adjudication or other binding administrative determination that Mark actually engaged in any wrongdoing. While the letter does allege a few specific instances of missteps on Marks' part, particularly with regard to her patient records, it consists mostly of language about what TDHOI "advise[s]," "remind[s]," or "strongly suggest[s]," culminating in a warning that Marks merely *may have* broken Tennessee's licensure laws. It is therefore debatable whether Rule 404(b) provides the governing standard here, or, at least, Rule 404(b) should apply to the entire letter. Regardless, however, even if this is arguably not strictly a Rule 404(b) issue, the same basic considerations of relevance and prejudice are addressed by Rule 403, and the court must determine whether the likely somewhat prejudicial admonishments found in the letter are admissible.

The Sixth Circuit recently restated the elements necessary for establishing a drug-related conspiracy under § 846 as follows:

> Stated succinctly, a drug conspiracy requires the government to show that two or more individuals have agreed to violate a drug law (such as [21 U.S.C.] § 841(a)(1)'s ban on distributing drugs) and that the defendant knowingly and voluntarily entered into this agreement. This drug-conspiracy test comports with the usual understanding of a "conspiracy," "the essence of which is an agreement to commit an unlawful act."
>
> As the test shows, conspiracy (like attempt) is an "inchoate" offense. The government need not prove that the conspirators completed their agreed-upon drug crime. In fact, it need not prove that the conspirators even took an overt act to implement the crime. The knowing agreement to distribute drugs in violation of § 841(a)(1) is itself the completed crime of a distribution conspiracy.

*United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021) (citing *United States v. Potter*, 927 F.3d 446, 453 (6th Cir 2019); *United States v. Shabani*, 513 U.S. 10, 17 (1994); quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975); *United States v. Robinson*, 547 F.3d 632, 638 (6th Cir. 2008)). An extra wrinkle, however, exists when the drugs at issue, like the ones here, can be

4

lawfully distributed, within certain parameters, as part of the defendant's licensed healthcare practice. *See* 21 U.S.C. § 823 (allowing distribution by certain "qualifying practitioners" in select situations). In such a case, the government must show not merely an agreement to distribute the relevant substance—which might reflect a wholly lawful professional arrangement between practitioners—but an agreement to distribute the substance outside the authorized channels and/or situations that would render the distribution lawful. The government's argument, therefore, hinges on whether the Letter of Concern is admissible evidence of such an agreement between Marks and Dr. Mehta.

It is not difficult to imagine a pattern of facts in which a letter *like* the Letter of Concern, from a state medical licensing authority to a licensee, would be relevant to and admissible in a criminal prosecution based on the licensee's distribution of controlled substances. For example, if the letter informed the licensee that prescribing a particular drug in a particular situation was not medically appropriate, and the licensee was later charged specifically with violating that prohibition after the letter was sent, the licensee's receipt of the letter might be relevant to the issues of knowledge and specific intent. *See* Fed. R. Evid. 404(b)(2) (recognizing that evidence that could be characterized as involving prior bad acts may be admitted to show, among other things, "knowledge," "intent," or "absence of mistake"). Indeed, the United States has identified some cases in which courts, consistently with that reasoning, allowed evidence of prior civil licensure-related actions as relevant to the federal criminal defendant's knowledge or plan. *See United States v. Jaszczult*, 330 F. App'x 367, 370 (3d Cir. 2009); *United States v. Kostenko*, No. 5:16-CR-00221, 2017 WL 1395500, at *3 (S.D.W. Va. Apr. 17, 2017); *United States v. Prejean*, 429 F. Supp. 2d 782, 791 (E.D. La. 2006). The fact that material from licensure proceedings may be admissible, however, does not mean that it always will be. In any given case, including this one,

there still must be a connection between the evidence that the government wishes to introduce and a disputed issue of material fact relevant to the specific criminal activity alleged. Without that connection, the evidence related to the civil investigation would serve no purpose other than to prejudice or confuse the jury.

The government argues that the Letter of Concern is "direct evidence of [Marks'] knowledge that her prescribing was without a legitimate medical purpose and not in the usual course of professional practice." (Doc. No. 113 at 4.) The government's argument in that regard, however, is almost entirely conclusory. The government does not identify what aspect of the letter, if any, bears on the definitions of "legitimate medical purpose" or "usual course of professional practice" relevant to Marks' particular alleged wrongdoing. The topics discussed by the letter, rather, primarily encompass the best practices for making decisions as a prescriber and documenting the patient's treatment; little, if anything, in the letter is about the edict that a practitioner should not prescribe opioids in the absence of a legitimate medical purpose. The few reminders, suggestions, and warnings that the Letter of Concern does contain regarding non-recordkeeping issues have, at best, a tenuous relationship to this criminal prosecution. For example, the Letter of Concern cautions Marks about prescribing opioids simultaneously with benzodiazepines, but none of the charges contained in the Superseding Indictment expressly involves that issue (or, indeed, involves benzodiazepines at all). Accordingly, whether one views this issue through the lens of Rule 404(b)—or, in the alternative, simply as an ordinary issue of weighing probative value versus undue prejudice under Rule 403—the government has failed to identify a specific disputed material fact on which the letter appropriately bears that would outweigh the letter's capacity for prejudice.

6

The United States argues next that the letter is admissible under the *res gestae* doctrine. The Sixth Circuit "ha[s] recognized the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is inextricably intertwined with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quoting *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012)). "*Res gestae* is sometimes also known as 'intrinsic evidence.' 'Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *Id.* (quoting *United States v. Stafford*, 198 F.3d 248, at *4 (6th Cir. 1999)). There is, however, simply nothing about the Letter of Concern that is inherent to, or inextricably intertwined with, the conduct charged in the Superseding Indictment. To the contrary, the Letter of Concern was not even sent until a year into the period identified by the Superseding Indictment as encompassed by the conspiracy, and seven of the nine specific prescriptions identified in Counts Two through Ten occurred before the letter was received.

The government, moreover, has failed to identify any reason why it would be necessary to mention the letter in telling the story of the alleged criminal conspiracy or unlawful prescribing at issue. The government likens this case to *United States v. Cunningham*, 103 F.3d 553 (7th Cir. 1996), in which the Seventh Circuit held that informing the jury of the fact of a defendant nurse's licensure suspension was necessary "to contextualize, and by contextualizing enable the jury to understand," her actions. *Id.* at 557. There is, however, no similar needed context here. Marks is accused of writing prescriptions she should not have (and conspiring with her supervising physician to do so). The fact that she happened to receive a warning letter related to her licensure,

7

well into her period of alleged wrongdoing, provides no meaningful context necessary to the jury's understanding of the actions alleged.

Although the court will exclude the letter, it will not grant the defendants' broader request to categorically exclude all evidence "pertaining to" the TDHOI investigation. (Doc. No. 105 at 2.) The defendants do little to identify what evidence, other than the Letter of Concern, she is seeking to have excluded. As the government points out, there are facts related to the investigation that, depending on the testimony adduced at trial, could well be highly relevant to the charged conduct. For example, Dr. Mehta was interviewed in the course of the investigation, and that interview specifically addressed his knowledge of Marks' prescribing practices. The nature of the meeting of the minds between Marks and Dr. Mehta is highly relevant to Count One, and any evidence of Dr. Mehta's knowledge of Marks' prescribing practices is likely relevant to the conspiracy charge. While it may be appropriate to limit the way in which such evidence is presented, so as to avoid an unnecessarily prejudicial discussion of the state's civil investigation, the court will not exclude all hypothetical evidence purely because it has a connection to the civil proceedings. *See Kostenko*, 2017 WL 1395500, at *3 (acknowledging that some "evidence from administrative proceedings" was likely admissible but requiring the government to approach the bench before introducing it, in order to avoid undue prejudice).

For the foregoing reasons, the defendants' Motion to Exclude Government's Proposed Rule 404(b) Evidence (Doc. No. 105) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that the September 28, 2017 Letter of Concern to Marks is **EXCLUDED** from evidence on the ground that its minimal probative value is substantially outweighed by a danger of unfair prejudice. The court, however, reserves for trial its ruling on any other issues regarding evidence connected to the state licensure investigation. It is **ORDERED** that, before the

government seeks to introduce such evidence at trial, it shall raise the issue to the court outside the presence of the jury.

    It is so **ORDERED**.

                                              ALETA A. TRAUGER
                                              United States District Judge