# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-cr-00003-1** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **HEATHER MARKS** | ) | |

## MEMORANDUM

In the Order entered on August 22, 2025 (Doc. No. 302), the court denied defendant Heather Marks' Motion for a Hearing to determine under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), whether the government's expert witness, Dr. Carl Christensen, may testify at trial (Doc. No. 288). This Memorandum explains and justifies that decision.

## I.    BACKGROUND

Defendant Marks, a nurse practitioner, is charged in a Superseding Indictment with distributing and conspiring with her former co-defendant, Hemal Mehta, M.D., to knowingly or intentionally distribute Schedule II controlled substances outside the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a) and 846. The case is set for trial on October 21, 2025. The government intends to proffer at trial the testimony of Dr. Carl Christensen to help it prove that Marks knowingly or intentionally acted outside the scope of her authorization in prescribing controlled substances, as described in *Ruan v. United States*, 597 U.S. 450, 454 (2022). (*See* Doc. No. 296 at 2.)

The government has provided Dr. Christensen's *curriculum vitae* ("CV") (Doc. No. 291-1) and a Supplemental Report (Doc. No. 299 (sealed)) encompassing his anticipated testimony.

The government explains that Dr. Christensen is expected to testify about (1) the provider/patient relationship; (2) the legitimate medical purposes and risks associated with the prescribing of opiates; (3) the usual course of professional practice in diagnosing and treating a pain patient with controlled substances and the duty to watch for signs of abuse, addiction, and diversion, with particular focus on "red flags"; (4) the role of Nurse Practitioners ("NPs") and the relationship between NPs and their supervising physicians; and (5) the controlled substance prescriptions and patient files at issue in this case and the problems Dr. Christensen perceives in Marks' practices, including her failure to adequately document patient care and disregard of numerous red flags before issuing high-dose prescriptions for controlled substances. (*See id.*; *see also* Doc. No. 299).)

Marks moved for a *Daubert* hearing on whether Dr. Christensen is "qualified to opine as to the standard of care of a nurse practitioner" (Doc. No. 288 at 2), which the court construes as a motion to exclude Dr. Christensen from testifying as an expert in this case. Marks argues that (1) Dr. Christensen is not qualified to testify as an expert in the field of pain management and chronic pain care; (2) Dr. Christensen is not qualified to testify about the standard of care for medical practice in a small town in Tennessee; and (3) Dr. Christensen, as a medical doctor, is not qualified to testify about the standard of professional care that pertains to NPs or the supervision of NPs. (Doc. No. 290 at 2–3.) In sum, according to Marks, Dr. Christensen is "wholly unqualified to give expert testimony of whether Ms. Marks, a nurse practitioner, practicing pain management in Carthage, Tennessee, prescribed controlled substances to her patients without a legitimate medical purpose and while acting outside the usual course of professional practice." (*Id.* at 3.) She also maintains that "[n]o expert testimony is needed nor allowed for the jury to decide Mark[s'] intent" in prescribing controlled substances." (*Id.* at 6.)

## II.    STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 344, 251 (6th Cir. 2001). Generally, under Rule 702, the court must, as a threshold matter, determine whether a proffered expert is qualified "by knowledge, skill, experience, training, or education" to testify as an expert. *Id.*; *Saginaw Chippewa Indian Tribe v. Blue Cross Blue Shield of Mich.*, 745 F. Supp. 3d 524, 530 (E.D. Mich. 2024). In addition, to be admissible, the proffered testimony must be both relevant and reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

Aside from Rule 702, the Supreme Court in *Daubert* provided a non-exhaustive list of factors for courts to consult in evaluating the reliability of expert testimony, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94). However, the reliability test is "'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal Litig.*, 527 F.3d at 529 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). The Sixth Circuit has "recognized that the *Daubert* factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *Id.* (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

The standard to exclude an expert's testimony under *Daubert* is high, and "rejection of expert testimony is the exception, rather than the rule." *Nusbaum v. Enlighten Fam. Chiropractic, LLC*, No. 19-cvV-10223, 2023 WL 319782, at *5 (E.D. Mich. Jan. 19, 2023) (collecting cases). Typically, "[i]f there is a reasonable factual basis for expert testimony, it should be admitted." *Id.*

(citations omitted). Moreover, the Sixth Circuit has emphasized the distinction between the "credibility and accuracy" of a proffered opinion and its reliability. *In re Scrap Metal Litig.*, 527 F.3d at 529. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529–30. Generally, any issue regarding the credibility or accuracy of expert testimony goes to the weight rather than the admissibility of the evidence, and it can be addressed via cross-examination and the "presentation of contrary evidence" by opposing counsel. *Id.* at 530 (quoting *Daubert*, 509 U.S. at 596).

## III. DISCUSSION

The defendant appears to argue, first, that Dr. Christensen is not qualified, generally, to testify as an expert in this case. The court finds that Dr. Christensen's CV provides ample ground to conclude that he is qualified to offer opinions in this case on the professional standards governing the medical practice of pain management. (*See generally* (Doc. No. 291-1.) Marks' argument that Dr. Christensen has "no licensure, education, or training" in pain management (*see* Doc. No. 290 at 3) simply overlooks vast swaths of Dr. Christensen's admittedly very long CV (Doc. No. 291-1).

"[A] medical doctor is generally competent to testify regarding matters within his or her own professional experience." *Gass v. Marriott Hotel Servs.*, 558 F.3d 419, 427–28 (6th Cir. 2009). Dr. Christensen is clearly qualified "by knowledge, skill, experience, training, [and] education" to testify as an expert to regarding the prescribing of controlled substances for pain and in the context of addiction.

Second, that Dr. Christensen is a medical doctor does not disqualify him from testifying against Marks, even though she is an NP rather than a medical doctor. Notably, Marks has not pointed to persuasive authority holding that medical doctors cannot testify about whether an NP's

conduct is outside the usual course of professional practice. Numerous courts within the Sixth Circuit have held that "[p]hysicians may testify regarding the standard of care that applies to nursing." *Stewart v. Hensley*, No. 0:20-008-DCR, 2023 WL 12091143, at *15 (E.D. Ky. Jan. 13, 2023) (citing *Hamilton v. Pike Cnty.*, No. 11-99-ART, 2012 WL 6570508, at *2 (E.D. Ky. Dec. 17, 2012)); *Underwood v. United States*, No. 3:18-CV-1830, 2020 WL 6319129, at *2 (N.D. Ohio Sept. 2, 2020) (deeming ("Dr. Breall . . . qualified to render his opinion as to the standard of care for nurse practitioners"); *Gaasch v. Stoev*, No. 2:09-cv-02270-JPM-dkv, 2011 WL 13269777, at *3 (W.D. Tenn. Dec. 21, 2011) (finding under the circumstances presented that a doctor was qualified to testify about the standard of care applicable to nurses).

More to the point, this is not a medical malpractice suit, and the standard of care that applies in negligence lawsuits has little bearing on this case. The question in this criminal case is *not* whether Marks was merely negligent in her prescribing practices. Instead, at issue is whether Marks knowingly or intentionally issued prescriptions outside the scope of her authorization, 21 U.S.C. § 841(a). "[A]s provided by regulation, a prescription is only authorized when a [practitioner] issues it 'for a legitimate medical purpose . . . acting in the usual course of [her] professional practice.'" *Ruan*, 597 U.S. at 454 (quoting 21 C.F.R. § 1306.04(a)). While the defendant remains free to cross-examine Dr. Christensen about the differences between NPs and MDs, the government persuasively argues that the applicable standard for purposes of criminal prosecution does not change based on the identity of the provider.

Finally, while the defendant sets forth the standard for the admissibility of expert testimony as requiring that the proffered testimony be both relevant and reliable (*see* Doc. No. 290 at 4), she offers no actual argument that Dr. Christensen's testimony does not satisfy these requirements, aside from generally arguing that he is not qualified to offer an expert opinion in the field of pain

medicine. Having reviewed Dr. Christensen's Supplemental Report and the government's Response to the defendant's motion, the court is persuaded that his opinions are both relevant and reliable, meaning that they are based on sufficient facts or data and are the product of reliable principles and methods reliably applied to the facts of the case. *In re Scrap Metal*, 527 F.3d at 528–29.

## IV.    CONCLUSION

For the reasons set forth herein, the court finds that the defendant's Motion for Hearing (Doc. No. 288) must be denied and that Dr. Christensen is qualified to testify as an expert in this case.

_____
ALETA A. TRAUGER
United States District Judge